IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2019

**STATE OF TENNESSEE v. MICHAEL ANDREW BURROWS**

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2017-CR-4     Jill Bartee Ayers, Judge**

_____

**No. M2019-00367-CCA-R3-CD**

_____

The Montgomery County Grand Jury indicted Defendant, Michael Andrew Burrows, on seven counts of rape of a child and eight counts of aggravated sexual battery. Pursuant to a plea agreement, Defendant pled guilty as a Range I offender to two counts of sexual battery, with an agreed out-of-range sentence of four years on each count, with sentence alignment, manner of service, and the issue of judicial diversion to be determined by the trial court. The remaining counts were dismissed. Following a sentencing hearing, the trial court denied judicial diversion, imposed consecutive sentences, and sentenced Defendant to eight years' probation. Defendant now appeals the denial of judicial diversion. Based on a thorough review of the record and applicable case law, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Gregory D. Smith (on appeal) and Chase T. Smith (at trial), Clarksville, Tennessee, for the appellant, Michael Andrew Burrows.

Herbert H. Slatery III, Attorney General and Reporter; Daniel P. Whitaker, III, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural History

*Guilty Plea Submission Hearing*

At the beginning of the hearing, the State announced that parties had reached a plea agreement whereby the Defendant would plead guilty to two Class E felonies with an out-of-range sentence of four years with thirty-five percent release eligibility on each conviction and with the alignment and manner of service of the sentences to be determined at a sentencing hearing.[1]  Defendant acknowledged that he understood that the sentences were out-of-range.  The State presented the following factual basis for the plea:

> If this case were presented to a trial by jury, the proof would be that on October 2nd, 2016, law enforcement responded to a call of sexual assault at [***] Woodlawn Road, here in Montgomery County.   The [c]omplainant, Lonna Burrows (phonetic), had called 9-1-1 in reference to her ten-year-old daughter having made statements that her stepfather, the Defendant, had touched her inappropriately.
>
> Law enforcement would testify that in -- upon going in the home, they did find [Defendant] laying [sic] in the bathtub on his back, naked. [Defendant] was mildly damp from a shower and had an odor of alcoholic beverage on his person.  He stood up and was asked to put on underwear, which was located on the floor.  [Defendant] was taken into custody, at that time.
>
> The children were later interviewed and would testify at trial, according to [the] following: L.S., whose date of birth is 02/21/06, would testify that the Defendant had touched and nibbled on her chest and breast; that he had put his ["]dinger["] in her vagina; that he had made her touch his ["]dinger["] with her hands; and [made] her get on top of him while she was naked.  She indicated that, that had been going on for approximately two years. K.S., . . . whose date of birth was 12/10/07, would testify that approximately four to five times in her room that the Defendant had touched her inappropriately with his finger, . . . playing with her private on

---

[1] A plea to an out-of-range sentence is known as a *Hicks* plea.  *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997).   "[A] knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility." *Id.*

- 2 -

her skin, while cuddling with her. She thought that that had started when she was approximate eight years old.

The trial court advised and questioned Defendant concerning his rights pursuant to Tennessee Rule of Criminal Procedure 11(b) and insured that Defendant was voluntarily and knowingly agreeing to an out-of-range sentence of four years on each count. The court then accepted Defendant's plea of guilty to two counts of Class E felony sexual battery and, pursuant to the plea agreement, sentenced Defendant to four years on each count. The court set a sentencing hearing to determine the alignment of the sentences and the method and manner of service.

*Sentencing Hearing*

At a sentencing hearing, Lonna Burrows testified that L.S., age twelve, was her older daughter and that K.S., age eleven, was her younger daughter. She stated that, at one time, she was married to Defendant and that Defendant was in her children's lives for about five years. Ms. Burrows stated that, since the offenses occurred, her children were "empowered" and had "overcome huge, huge adversity[.]" She said that L.S. was "on track" but that K.S. was "struggling" with "suicidal tendencies" and recently hospitalized due to the formation of a suicide plan. Ms. Burrows testified that both L.S. and K.S. received treatment at the Sexual Assault Center in Clarksville. On cross-examination, Ms. Burrows testified that, when she and Defendant were married, Defendant's two other children were also living with them.

Defendant testified that he resided in Bismarck, Missouri, with his girlfriend and her three children. He said that his girlfriend worked full-time and that he stayed home with her children. Defendant stated that he was not concerned that he would commit sexual offenses against his girlfriend's children because he "[had] no predilection . . . towards children." Defendant stated that, before his guilty plea submission, he spent approximately 180 days in jail in protective custody. Defendant said that his time in jail "was rough[.]" He testified that he was medically retired from the Army in December 2013 due to post-traumatic stress disorder, some physical injuries to his back, knees, neck and shoulder, and a traumatic brain injury. Defendant was rated by the Veterans Administration with an eighty-percent disability. Defendant stated that, due to these injuries, he was prescribed muscle-relaxant and anti-inflammatory medications and that he was taking these medications at the time of his offenses.

Defendant testified that, when he was married to Ms. Burrows, he had "a little bit" of an alcohol problem. He said that he was heavily intoxicated at the time of the offense of October 2, 2016, and that he only remembers waking up in the bathtub. Defendant stated that his decision to drink to excess was "regrettable" and that, "for the most part,"

he "ha[d] not let [him]self get that far again." Defendant stated that it "[broke] his heart" that the children "have been put through all of this. That they have this altered image of" him now. Defendant said that, due to a ruling by the Juvenile Court in a case instituted by their mother, he was prohibited from seeing his own biological children. Defendant testified that he had no prior criminal record and that, since his arrest in October 2016, he had not committed any new offenses or violated any conditions of his bond.

On cross-examination, Defendant testified that his girlfriend's three children were ages eight, seven, and four. Defendant stated that he drank alcohol approximately one to two times per month and no more than two to three drinks at a time. Defendant had not attended any Alcoholics Anonymous meetings. Defendant said that he had no recollection of the events alleged by L.S.

The trial court noted that a conviction for sexual battery would "normally be [a] one[-] to two-year sentence" but that Defendant's plea agreement was for an out-of-range sentence of four years on each count. Because the length of the sentence for each count was established as part of the plea agreement, the court declined to address "enhancement or mitigating factors."

The court noted that it had considered the evidence presented at the plea submission and sentencing hearing, the presentence report, and the psychosexual evaluation. In considering diversion, the trial court stated that it did not have "a lot of information" on Defendant's amenability to correction but noted that Defendant did not have a prior criminal record.

The trial court stated that it placed a lot of weight on the psychosexual evaluation, which had "plenty of recommendations for correction."[2] The court noted that, even though the psychosexual evaluation showed that Defendant was a "low to moderate risk, all of the treatment [wa]s consistent with sex offender treatment over a long period of time."

The trial court also noted that the circumstances of the offense included two victims and that the offenses to which Defendant pled occurred over approximately "a

---

[2] Only a brief cover sheet for the Psychosexual Risk Assessment was included in the record on appeal. The party seeking appellate review of an issue has a duty to prepare a record that conveys a "complete account of what transpired with respect to the issues forming the basis of the appeal." *State v. Ballard*, 855 S.W.2d 557, 560 (Tenn. 1993). "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). We therefore presume the trial court's finding that the psychosexual evaluation provided "plenty of recommendations for correction" was supported by sufficient evidence.

year and nine months." Further, the trial court found that Defendant abused his position of trust as their stepparent.

Regarding Defendant's social history, the court stated:

> One of the issues that has stood out to me is the drinking. [Defendant] blames this [October 2, 2016] incident really on his drinking, and yet, he's testifying today he is still drinking. He says that he's got it under control and he's not going to let himself get in that position again. But that's always troublesome to the [c]ourt, that when someone admits there's an underlying cause and yet he's still drinking, that is a concern to the [c]ourt.

Concerning Defendant's physical and mental health, the trial court acknowledged that Defendant was receiving treatment for his various physical and mental problems.

Concerning the deterrence value to the accused and others, the court stated that it "[saw] too many of these cases" and determined that diversion would not serve the interests of the public or Defendant, who needed "long-term treatment."

The trial court stated that, "when I weigh all of those factors, particularly the circumstances of the offense, the deterrence value, and serving the interests of the public, the Court just finds that those factors weigh against diversion in this case."

Regarding consecutive sentencing, the trial court relied upon Tennessee Code Annotated section 40-34-115(b)(5), *i.e.*, that the offenses involved "two or more statutory offenses involving sexual abuse of a minor, with consideration of aggravating factors arising from the relationship, the span of time, and the nature of the activities." Based upon section 40-34-115(b)(5), the trial court determined that consecutive sentencing was appropriate.

Finally, the court considered the manner of service of Defendant's consecutive four-year sentences. The court stated that "sentencing should be the minimum, based on [Defendant's] behavior since he has really bonded out and since he entered these pleas." The trial court sentenced Defendant to probation and required Defendant to register as a sex offender. This timely appeal follows.

## Analysis

Defendant argues that the trial court abused its discretion in denying judicial diversion "based on the type of the crime alone[.]" Defendant claims that the court failed

to properly consider his amenability to correction because he accepted responsibility for the crime against L.S., "without admitting guilt," and that he "remorsefully accepts responsibility for his actions." Moreover, Defendant contends that the trial court did not consider all of the relevant judicial diversion factors and failed to place its findings on the record; therefore, the trial court's judgment is not entitled to a presumption of reasonableness.

The State responds that the trial court properly applied the relevant factors; thus, the trial court's judgment is subject to a presumption of reasonableness. The State asserts that the record supports denial of judicial diversion.

Tennessee Code Annotated section 40-35-313 governs judicial diversion procedure. Upon a finding of guilt, the trial court may place a qualified defendant on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2019). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (2019). The statute defines a "qualified defendant" as a defendant who:

(a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;

(b) Is not seeking deferral of further proceedings for any offense committed by any elected or appointed person in the executive, legislative or judicial branch of the state or any political subdivision of the state, which offense was committed in the person's official capacity or involved in the duties of the person's office;

(c) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119, driving under the influence of an intoxicant as prohibited by § 55-10-401, or a Class A or B felony;

(d) Has not previously been convicted of a felony or a Class A misdemeanor for which a sentence of confinement is served; and

(e) Has not previously been granted judicial diversion under this chapter or pretrial diversion.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(I) (2019).

However, satisfying these criteria does not presumptively entitle a defendant to judicial diversion but simply allows the trial court to grant diversion in appropriate cases.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *State v. Faith Renea Irwin Gibson*, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999); *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

In determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

> (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Parker*, 932 S.W.2d at 958. In addition to the *Electroplating* factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." *State v. Anthony Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted), *no perm. app. filed*. The record must reflect that the trial court weighed all the *Electroplating* factors against each other, and the trial court must give an explanation of its ruling on the record. *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014); *Electroplating*, 990 S.W.2d at 229.

When the record reflects that the trial court considered the *Electroplating* factors, identified which factors were relevant, and explained its ruling on the record, this court must apply a presumption of reasonableness and review the judgment for an abuse of discretion. *King*, 432, S.W.3d at 319, 327. We will affirm the trial court's judgment "so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. However, if the trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this court may either conduct a *de novo* review or remand the issue for reconsideration. *Id.* at 327-28.

Here, the record establishes that the trial court considered the *Parker* factors and weighed them against each other as required by *Electroplating*. The trial court acknowledged that Defendant did not have a prior criminal record and that there was not sufficient proof to show that he was not amenable to correction. The court also noted that there was no proof that Defendant had behavior problems since his arrest and that his

medical conditions were being properly treated. However, the court determined that the circumstances of the offenses which involved the sexual battery of Defendant's two stepdaughters over a prolonged period of time, Defendant's abuse of his position of trust as a stepparent, Defendant's social history of alcohol abuse, the deterrence value to others, and the interests of the public outweighed the factors favoring diversion.

Because the trial court properly considered the *Parker* factors, this court will "apply a presumption of reasonableness" and will affirm the trial court's decision "so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327. Based upon the information provided at the guilty plea submission hearing, the record established that Defendant sexually battered his two stepdaughters repeatedly over the course of almost two years. We conclude that substantial evidence supports the trial court's denial of judicial diversion.

## Conclusion

The trial court did not abuse its discretion in denying judicial diversion. The judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE